**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **UNITED STATES** *ex rel.* Kevin T. Corcoran,<br><br>  *Plaintiffs*,<br><br>  v.<br><br>**BANK OF AMERICA CORPORATION**,<br>**CALIBER HOME LOANS, INC.**,<br>**CITIZENS FINANCIAL GROUP, INC.**,<br>**FREEDOM MORTGAGE CORPORATION**,<br>**HOMESTEAD FUNDING CORP.**,<br>**JPMORGAN CHASE & CO.**,<br>**LOANDEPOT.COM, LLC**,<br>**PLAZA HOME MORTGAGE, INC.**,<br>**QUICKEN LOANS INC.**,<br>**UNITED WHOLESALE MORTGAGE, LLC**,<br>**WELLS FARGO & CO.**, and<br>**ABC CORPORATION 1-100**,<br><br>  *Defendants*. | **No.** _____<br><br>**FILED UNDER SEAL PURSUANT TO**<br>**31 U.S.C. § 3730(b)(2)**<br><br>**DO NOT PLACE ON PUBLIC DOCKET**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

  Plaintiff and *qui tam* Relator Kevin T. Corcoran, by and through his undersigned counsel Brown, LLC, alleges of personal knowledge as to his own observations and actions, and on information and belief as to all else, as follows:

**I.
PRELIMINARY STATEMENT**

  1. In the wake of the 2008 housing market crash, Congress passed sweeping reforms to the home mortgage industry in the form of the Dodd-Frank Wall Street Reform and Consumer Protection Act (the "Dodd-Frank Act").

  2. Among other reforms, Dodd-Frank mandated lenders to make reasonable and good faith determinations of consumers' ability to repay loans. Dodd-Frank also directed the newly-minted Consumer Financial Protection Bureau (CFPB) to adopt new processes for disclosure of

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

credit terms and mortgage costs as required by the Truth in Lending Act (TILA) and Real Estate Settlement Procedures Act (RESPA). The TILA-RESPA Integrated Disclosures (TRID) Rule was implemented in 2015.

3. Under the TRID Rule, lenders are mandated to disclose all closing costs paid by the borrower, including any and all title closing fees and attorney fees related to closing.

4. In New York State, Defendants, some of the largest banks and financial institutions in the country, disregarded these obligations and knowingly and routinely omitted title closing fees and borrower's attorney fees on the disclosure forms.

5. Further, Defendants fed this falsified data into the automated underwriting systems (AUS) and uniform closing dataset (UCD) used by Fannie Mae and Freddie Mac, as well as the Federal Housing Administration and the Department of Veterans Affairs, to fraudulently induce those entities to approve and/or purchase the mortgage loans.

6. Defendants' knowing omission of closing costs thereby caused the above government entities to approve and/or purchase New York mortgages with hidden risks that Defendants were obligated, yet failed, to disclose. Defendants' false submissions and sales of these mortgages were therefore false claims on the government.

7. Relator thus brings this action on behalf of the United States, seeking treble damages and penalties for violations of the federal False Claims Act, 31 U.S.C. §§ 3729 *et seq*. (the "FCA").

8. This Complaint is filed *in camera* and under seal pursuant to 31 U.S.C. § 3730(b)(2). A copy of this Complaint, along with written disclosure of substantially all material evidence and information that Relator possesses, will be served on the Attorney General of the

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

United States and the United States Attorney for the Southern District of New York, pursuant to 31 U.S.C. § 3730(b)(2).

## II.
## JURISDICTION AND VENUE

9. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action is brought for violations of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, a federal statute.

10. The Court has personal jurisdiction over Defendants because Defendants (a) are residents of, and/or transact significant business in, this District; and (b) have carried out their fraudulent scheme in this District.

11. Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b)(2), because Defendants can be found in, and transact or have transacted business in, this District, and the events and omissions that give rise to these claims have occurred in this District.

12. This Complaint was filed within the period prescribed by 31 U.S.C. § 3731(b).

## III.
## NO PUBLIC DISCLOSURE;
## DIRECT AND INDEPENDENT KNOWLEDGE
## OF VIOLATIONS OF THE FALSE CLAIMS ACT

13. There has been no public disclosure, relevant under 31 U.S.C. § 3730(e), of the "allegations or transactions" in this Complaint. Alternatively, to the extent that any such public disclosure has been made, Relator possesses information that is independent of and materially adds to any allegations that may have been publicly disclosed.

14. Relator makes the allegations in this Complaint based on his own knowledge, experience and observations. Relator is the original source of the information on which the

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

allegations herein are based, has direct and independent knowledge of such information, and will voluntarily disclose such information to the United States.

## IV.
## THE PARTIES

15. Relator brings this action on behalf of the United States. At all times relevant to this Complaint, the Federal Housing Administration ("FHA"), which is part of the U.S. Department of Housing and Urban Development ("HUD"), insures residential mortgage loans issued to eligible borrowers. The FHA insures lenders against losses if the borrower defaults, allowing the lenders to offer more mortgages to homebuyers. The FHA currently insures more than 7.8 million single family mortgages, with a total unpaid principal balance of more than $1.2 trillion.[1]

16. At all times relevant to this Complaint, the U.S. Department of Veterans Affairs ("VA") guarantees a large portion of the mortgage loans issued to eligible veterans. In 2021, the VA guaranteed 1.4 million mortgages with a combined loan balance of $447 billion.[2]

17. At all times relevant to this Complaint, the Federal Housing Finance Agency served, and continues to serve, as conservator for both the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac") (together, the Government Sponsored Entities or "GSEs").

18. After the 2008 housing market crisis, under the FHFA's conservatorship, the GSEs entered into Senior Preferred Stock Purchase Agreements (SPAs) with the U.S. Treasury Department to provide financial support for the GSEs and to support their mission of providing

---

[1] https://www.hud.gov/press/press_releases_media_advisories/hud_no_21_187 (last accessed Aug. 8, 2022).
[2] https://www.benefits.va.gov/REPORTS/abr/docs/2021_loan_guaranty.pdf (last accessed Aug. 8, 2022).

stability and liquidity in the secondary housing finance market.[3] As of September 30, 2019, the GSEs had withdrawn over $190 billion from the Treasury to accomplish this mission.[4]

19. Under the current iteration of its SPA, each GSE is obligated to make quarterly dividend payments to the U.S. Treasury of its net revenues in excess of a capital reserve of $3 billion.

20. Relator Kevin T. Corcoran is a resident of New Jersey. Relator is an experienced real estate attorney representing buyers, sellers, and mortgage brokers and lenders in real estate transactions for over 37 years. During his career, Relator has represented parties at over 15,000 closings in New Jersey and New York.

21. Defendant Bank of America Corporation is a Delaware corporation headquartered in Charlotte, North Carolina. Bank of America regularly conducts business in New York, and originates and underwrites residential mortgage loans for properties in New York.

22. Defendant Caliber Home Loans, Inc. is a Delaware corporation headquartered in Coppell, Texas. Caliber Home Loans regularly conducts business in New York, and originates and underwrites residential mortgage loans for properties in New York.

23. Defendant Citizens Financial Group, Inc. is a Delaware corporation headquartered in Providence, Rhode Island. Citizens Financial Group regularly conducts business in New York, and originates and underwrites residential mortgage loans for properties in New York.

24. Defendant Freedom Mortgage Corporation is a New Jersey corporation headquartered in Mount Laurel, New Jersey. Freedom Mortgage regularly conducts business in New York, and originates and underwrites residential mortgage loans for properties in New York.

---

[3] *See* https://www.fhfa.gov/Conservatorship/Pages/Senior-Preferred-Stock-Purchase-Agreements.aspx (last accessed July 29, 2022).
[4] Latest data available. *See* https://www.fhfa.gov/DataTools/Downloads/Pages/Treasury-and-Federal-Reserve-Purchase-Programs-for-GSE-and-Mortgage-Related-Securities.aspx (last accessed July 29, 2022).

25. Defendant Homestead Funding Corporation is a domestic corporation headquartered in Albany, New York. Homestead Funding Corporation regularly conducts business in New York, and originates and underwrites residential mortgage loans for properties in New York.

26. Defendant JPMorgan Chase & Co. is a Delaware corporation headquartered in New York City, New York. JPMorgan Chase regularly conducts business in New York, and originates and underwrites residential mortgage loans for properties in New York.

27. Defendant Loandepot.com, LLC is a Delaware limited liability company headquartered in Foothill Ranch, California. Loandepot.com regularly conducts business in New York, and originates and underwrites residential mortgage loans for properties in New York.

28. Defendant Plaza Home Mortgage, Inc. is a California corporation headquartered in San Diego, California. Plaza Home Mortgage regularly conducts business in New York, and originates and underwrites residential mortgage loans for properties in New York.

29. Defendant Quicken Loans, Inc. is a Michigan corporation headquartered in Detroit, Michigan. Quicken Loans regularly conducts business in New York, and originates and underwrites residential mortgage loans for properties in New York.

30. Defendant United Wholesale Mortgage, LLC is a Michigan limited liability company headquartered in Pontiac, Michigan. United Wholesale Mortgage regularly conducts business in New York, and originates and underwrites residential mortgage loans for properties in New York.

31. Defendant Wells Fargo & Co. is a Delaware corporation headquartered in San Francisco, California. Wells Fargo regularly conducts business in New York, and originates and underwrites residential mortgage loans for properties in New York.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

32. Defendants ABC Corporation 1-100 are other corporations and entities that regularly conduct business in New York and originate and underwrite residential mortgage loans for properties in New York. Defendants ABC Corporation 1-100's true names and capacities are currently unknown to Relator. Relator will amend this Complaint to show such true names and capacities when the same have been ascertained.

## V.
## FACTUAL ALLEGATIONS

**A.     Automated Underwriting Process Used by Fannie Mae, Freddie Mac, FHA, and VA**

33. Fannie Mae and Freddie Mac are Government-sponsored enterprises ("GSEs") chartered by Congress to provide liquidity and stability to the US housing market.

34. As part of their mission, the GSEs purchase residential mortgages from lenders and other financial institutions. The GSEs then either hold these loans in investment portfolios or bundle them into mortgage-backed securities that are sold to investors. In 2021, the GSEs spent nearly $3 trillion to purchase mortgages.[5]

35. In order to sell a mortgage to a GSE, a lender or financial institution must first enter into a written contract with the GSEs. This contract allows the lender or financial institution to underwrite the mortgage loans, and to submit for sale individual or bulk loans to the GSEs, conditioned upon the lender's compliance with all applicable underwriting rules and federal consumer laws and regulations.

---

[5] *See* FEDERAL HOUSING FINANCE AGENCY, 2021 Report to Congress, Table 1A (Fannie Mae Mortgage Purchases), 10A (Freddie Mac Mortgage Purchases), available at https://www.fhfa.gov/AboutUs/Reports/ReportDocuments/FHFA-2021-Annual-Report-to-Congress.pdf (last accessed July 29, 2022).

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

36. Although the mortgage may be manually underwritten, the more popular option is to use the GSEs' automated underwriting systems, Desktop Underwriter ("DU") used by Fannie Mae, and Loan Product Advisor[6] ("LPA") used by Freddie Mac.

37. DU and LPA evaluate multiple risk factors, including, as pertinent here, the borrower's liquid cash reserves/assets, before outputting an underwriting recommendation.

38. Additionally, DU and LPA are also among the automated underwriting systems approved and used by the FHA and VA to underwrite the loans guaranteed and insured by the FHA and the VA.

39. Just before closing, the lender or financial institution will prepare and submit a uniform closing dataset ("UCD") file through a government-approved Loan Operating System ("LOS"), which is then transmitted to the GSEs. The UCD file contains, *inter alia*, closing costs and borrower's cash-to-close data.

40. The AUS approval and the UCD approval rely upon the accuracy of the information submitted, in order to properly evaluate risk and approve the mortgage loans for purchase by the GSEs and FHA and VA.

**B.    Lender's Disclosure Requirements Under TRID and Dodd-Frank**

41. TRID regulations require mortgage lenders to issue certain disclosure forms, called the loan estimate (LE) and closing disclosure (CD), during the mortgage application and real estate closing process. *See* 12 C.F.R. § 1026.19(e)-(f). The LE is issued to the borrower while the CD is issued to both borrowers ("borrower's CD") and sellers ("seller's CD")

42. The LE must be provided to the consumer no later than three business days after the lender receives certain basic information from the borrower, sometimes even before the

---

[6] Prior to 2016, LPA was known as Loan Prospector.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

consumer's loan application is completed, and the CD must be provided to the consumer at least three days before consummation.[7]

43. The lender issues the borrower's CD with assistance of the settlement agent and the lender will also require the settlement agent to provide the seller's CD to the sellers on the lender's behalf. 12 C.F.R. § 1026.19(f)(1)(v).

44. The LE must contain a "Good Faith Estimate" of all closing costs to be paid by the borrower. 12 C.F.R. §§ 1026.19(e), 1026.37(d). The LE is designed to allow a consumer to quickly compare the estimates of closing costs charged by various lenders.

45. And, at least three days before consummation, the CD must provide the actual closing costs the borrower will pay. 12 C.F.R. §§ 1026.19(f), 1026.38(d). At consummation or within 30 days after consummation, any changes to the CDs must be made and disclosed to the sellers and borrowers. Any unknown closing costs, discovered at closing or within 30 days thereafter, must be included in a revised CD and delivered to the Buyer and/or Seller.

46. "Closing costs" means all upfront costs associated with the loan and real estate transaction, excluding any down payment. Closing costs include taxes, government fees, the initial escrow payment at closing, and any other payments the consumer is likely to pay or has contracted with a third party to pay at closing. 12 C.F.R. §§ 1026.37(g), 1026.38(g).

47. As relevant here, the closing cost information on the LE and CD must be "based on the best information reasonably available to the creditor at the time the disclosure was provided." 12 C.F.R. § 1026.19(e)(3)(iii), Comment 3. The CFPB further elaborates:

> But, for example, if the subject property is located in a jurisdiction where consumers are customarily represented at closing by their own attorney, even though it is not a requirement, and the creditor fails to include a fee for the consumer's attorney, or includes an unreasonably low estimate for such fee, on the

---

[7] Consummation "means the time that a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. § 1026.2(a)(13).

9

original estimates provided under § 1026.19(e)(1)(i), then the creditor's failure to disclose, or unreasonably low estimation, does not comply with § 1026.19(e)(3)(iii).

*Id*.

48. If the actual closing costs paid by the borrower exceed the costs listed on the LE and CD, the lender must issue revised disclosure forms and refund to the borrower the amount of the excess. *See* 12 CFR § 1024.19(f)(2)(v) ("If amounts paid by the consumer exceed the [closing cost estimates provided on disclosure] the creditor complies with paragraph (e)(1)(i) of this section if the creditor refunds the excess to the consumer no later than 60 days after consummation.").

**C.     Defendants' Fraudulent Omission of Closing Costs for New York Mortgage Loans**

49. Each Defendant is a mortgage lender in New York. Each Defendant issues a significant number of FHA- and VA-backed mortgage loans, and further sells a significant number of mortgage loans to the GSEs. As such, Defendants are obligated to comply with the above TRID disclosure rules.

50. In a typical real estate transaction in most states, the title agent or the borrower's attorney will act as the settlement agent who handles the lender's proceeds and clears title. Lenders agree to this because the title insurance company will issue a "closing protection letter" that will indemnify the lender from any loss due to the misappropriation or mishandling of the loan proceeds.

51. New York is unique in that the State has effectively banned the use of closing protection letters.[8] As such, rather than hiring a separate settlement agent, lenders in New York will use their own attorneys as settlement agents. The settlement agent has the authority to issue

---

[8] *See* N.Y. Office of General Counsel, Opinion Re: Issuance of Closing Protection Letter by Title Insurance Company, available at https://www.dfs.ny.gov/insurance/ogco2005/rg051224.htm (last accessed July 29, 2022).

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

the seller's CD on behalf of the lender, and is responsible for providing the "best available information" for the lender to include on the borrower's CD.

52. Defendants and Defendants' attorneys, however, in New York, routinely omit certain costs on the LE and CD which they know New York borrowers will pay at closing.

53. Defendant and Defendants' attorneys routinely omit the expense the borrower incurs for their own attorney costs.

54. Defendants are aware that borrowers in New York are customarily represented by attorneys throughout the real estate closing process.

55. Defendants routinely disclose the borrower's attorney fees on the LE and CD disclosure forms in every state that customarily uses attorneys, except New York.

56. Defendant and Defendants' attorneys also routinely omit expenses the borrower incurs for title closing fees which are also called title settlement fees.

57. Defendants are aware that borrowers in New York customarily incur charges from title companies for services specifically associated with closing operations, including the title closer's physical attendance at closing.

58. Defendants routinely disclose the borrower's title closing fees on the LE and CD disclosure forms in every state except New York.

59. The omitted fees for the borrower's attorney and the title closer cost approximately $2,000 per closing; however, such fees could be significantly higher in complicated closings.

60. Defendants cannot plausibly claim that they are unaware of these hidden costs.

61. In fact, Defendants' attorneys attend the closing and sit at the same table as the borrower's attorney, seller's attorney and the title agent who they know are paid by the borrower.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

62. Defendants, from the time of receiving the loan application, have the Contract of Sale in the loan file. The New York Contract of Sale almost always includes the borrower's and seller's attorney contact information.

63. Defendant's attorneys are aware that in real estate transactions outside New York, the borrower attorney fees and title closing fees are fully disclosed as closing costs in those transactions and that the CDs in other states match the actual closing costs exactly.

64. Thus, Defendants have full knowledge that the borrower bears these costs that are not listed on the LE and CD.

65. Defendants then submit the falsified closing-cost information on loan applications submitted to the GSEs, the FHA, and the VA, through those agencies' approved automated underwriting systems (AUS), including DU and LPA, and through the uniform closing dataset (UCD) files. Because the borrower's liquid cash reserves/assets are calculated by deducting closing costs from verified cash assets, Defendants effectively inflate the borrower's liquid cash reserves/assets on the AUS loan applications.

66. Even a few thousand dollars in additional reserves can be sufficient to tip the scales in favor of an approval recommendation from AUS.

67. Accordingly, between October 3, 2015 (the date on which TRID became effective), and the present, Defendants sold hundreds of thousands of mortgage loans to the GSEs, for which the aforementioned closing costs had not been provided either on the TRID disclosure forms or on the DU and LPA loan applications.

68. Likewise, between October 3, 2015 and the present, Defendants issued hundreds of thousands of mortgage loans backed by either the FHA or the VA, for which the aforementioned

closing costs had not been provided to those agencies through manual underwriting or their approved automated underwriting systems, including DU and LPA.

69. Defendants conceal the borrower's attorney fees and title closing fees from the LE and CD in New York, because they know that such fees, in addition to the lender's attorney fees also paid by the borrower, will increase the total closing costs to a point in which certain borrowers will no longer have enough liquid cash reserves/assets to be approved by AUS.

70. Defendants also conceal these fees, on the good faith LE, to lure customers and to beat out their competitors with their lower closing cost estimates.

71. Thus, excluding the borrower's attorney fees and title closing fees from closing costs enables the lenders who fill out the forms and submit these loans for purchase or approval by the FHA, VA and the GSEs, to qualify individuals for mortgages who would not have otherwise qualified due to insufficient liquid cash reserves/assets.

72. Had the government been aware of Defendants' knowing concealment of borrower's attorney fees and title closing fees in New York, certain mortgages would have been denied by the GSEs, the FHA, and the VA for lack of borrower's cash reserves/assets.

73. By falsely underreporting the borrower's closing costs to the GSE, the FHA, and the VA, and blatantly disregarding the federal consumer laws meant to detect these very risks, Defendants thereby fraudulently induced those government entities to approve and purchase mortgage loans that would not otherwise have been approved and purchased.

74. Consequently, the Government and the taxpayers are assuming and/or guaranteeing loans that are riskier than what Defendants have represented.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

75. Every submission by Defendants to the GSEs, the FHA, and the VA, that knowingly underreports the borrower's liquid cash reserves/assets is a false claim made within the meaning of the FCA.

## VI.
## THE FALSE CLAIMS ACT

76. The False Claims Act (the "FCA"), 31 U.S.C. §§ 3729 *et seq.*, establishes liability for any "person" (natural or corporate) who, *inter alia*:

   a. "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(l)(A); or

   b. "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," *id.* § 3729(a)(l)(B).

77. "Knowing" is defined by the FCA to include "deliberate ignorance of the truth" or "reckless disregard of the truth." *Id.* § 3729(b)(1).

78. The FCA defines "claim" to include any request for money that:

   is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government—

   (I)   provides or has provided any portion of the money or property requested or demanded; or

   (II)  will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded….

*Id.* § 3729(b)(2)(A)(ii).

79. For each false claim or other violation, the statute provides for the assessment of treble damages, plus a civil penalty. *Id.* § 3729(a)(1)(G).

80. The FCA provides for payment of a percentage of the United States' recovery to a private individual who brings suit on behalf of the United States (the "Relator"). *See id.* § 3730(d).

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

81. As laid out above, the GSEs are the recipients of billions of dollars from the U.S. Treasury. Those funds are directly used by the GSEs to purchase mortgages sold by Defendants. Therefore, the GSEs are grantees of the Federal government within the meaning of the False Claims Act, and Defendants' false claims alleged herein were material to the payment of such government funds.

82. Thus, Defendants' false claims for payment submitted to the GSEs are actionable under the False Claims Act. *See United States ex rel. Grubea v. Rosicki, Rosicki & Assocs., P.C.*, 318 F. Supp. 3d 680, 704 (S.D.N.Y. 2018) (recognizing cause of action under the FCA for fraud upon Fannie Mae).

**COUNT I**
**VIOLATION OF THE FALSE CLAIMS ACT:**
**PRESENTATION OF FALSE CLAIMS**

83. Relator repeats and realleges each of the preceding paragraphs as if fully set forth herein.

84. As described in those paragraphs, since at least October 3, 2015, Defendants falsely represented to the GSEs, the FHA, and the VA that the closing costs associated with mortgage transactions in New York did not include, *inter alia*, the attorney fees and title closer fees paid by the borrowers and the sellers, despite Defendants' knowledge that borrowers and sellers paid these fees at closing.

85. These representations induced the GSEs, through their automated underwriting systems, to approve and purchase mortgage loans from Defendants that the GSEs would not have approved and purchased absent the false representations.

86. These representations also induced the FHA and the VA to approve and guarantee mortgage loans that they would not have guaranteed absent the false representations.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

87. Accordingly, Defendants presented and/or caused to be presented false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A).

88. By reason of these false or fraudulent claims that Defendants presented and/or caused to be presented, the government has paid out monies to Defendants they would not have paid had they known of the concealed closing costs, and the United States has been damaged in an amount to be proven at trial.

## COUNT II
## VIOLATION OF THE FALSE CLAIMS ACT:
## MAKING OR USING FALSE RECORD OR STATEMENT

89. Relator repeats and realleges each of the preceding paragraphs as if fully set forth herein.

90. As described in those paragraphs, since at least October 3, 2015, Defendants submitted false loan application documents through the automated underwriting systems used by the GSEs, the FHA, and the VA, including Desktop Underwriter and Loan Product Advisor. These documents hid from those government entities the fact that the closing costs associated with mortgage transactions in New York included, *inter alia*, the attorney's fees and title closer fees paid by borrowers and sellers, despite Defendants' knowledge that borrowers and sellers paid these fees at closing.

91. These false records and statements induced the GSEs, through their automated underwriting systems and the uniform closing dataset files, to approve and purchase mortgage loans from Defendants that the GSEs would not have approved and purchased absent the false documents.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

92. These false records and statements also induced the FHA and the VA to approve and guarantee mortgage loans that they would not have approved and guaranteed absent the false documents.

93. Accordingly, Defendants made and used false or fraudulent records or statements in violation of 31 U.S.C. § 3729(a)(1)(B).

94. By reason of Defendants' making or use of false records or statements, the United States has been damaged in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Relator respectfully requests that this Court enter judgment in his favor and that of the United States and against Defendants, granting the following on all Counts:

A. an award to the United States for treble its damages, a statutory penalty for each violation of the FCA, and for its costs pursuant to 31 U.S.C. § 3729(a)(3);

B. an award to Relator in the maximum amount permitted under 31 U.S.C. § 3730(d), and for the reasonable attorneys' fees and costs he incurred in prosecuting this action;

C. awards to the United States and Relator for pre- and post-judgment interest at the rates permitted by law; and

D. such other and further relief as this Court may deem to be just and proper.

[this area intentionally left blank]

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

### **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Relator demands trial by jury on all questions of fact raised by the Complaint.

Dated: August ___, 2022                     Respectfully submitted,

**BROWN, LLC**

_____
Patrick S. Almonrode
Chunsoo "Terence" Park
Jason T. Brown
111 Town Square Place, Suite 400
Jersey City, NJ 07310
(877) 561-0000 (phone)
(855) 582-5297 (fax)
*patalmonrode@jtblawgroup.com*
*terence.park@jtblawgroup.com*
*jtb@jtblawgroup.com*